MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
BRAYAN BRAVO, JOSE LUIS ROLDAN
ROMERO, DUMAS ARMANDO ALFARO
GODINEZ, JEFFERSON OSWALDO
BRAVO HIDALGO, JULIO TIGRE and
ANDERSON ANTONIO CEDENO,
*individually and on behalf of others similarly*
*situated,*

|  |  |
|---|---|
| | **COMPLAINT** |
| | **COLLECTIVE ACTION UNDER** |
| | **29 U.S.C. § 216(b) AND RULE 23** |
| | **CLASS ACTION** |

*Plaintiffs*,

**ECF Case**

-against-

BARONE STEEL FABRICATORS INC.
(D/B/A BARONE STEEL FABRICATORS),
NICK BARONE, RALPH BARONE, and
ALEX VERGARA,

*Defendants.*
--------------------------------------------------------X

Plaintiffs Brayan Bravo, Jose Luis Roldan Romero, Dumas Armando Alfaro Godinez,
Jefferson Oswaldo Bravo Hidalgo, Julio Tigre, and Anderson Antonio Cedeno, individually and
on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys,
Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Barone Steel
Fabricators Inc. (d/b/a Barone Steel Fabricators), ("Defendant Corporation"), Nick Barone, Ralph
Barone, and Alex Vergara ("Individual Defendants"), (collectively, "Defendants"), allege as
follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Barone Steel Fabricators Inc. (d/b/a Barone Steel Fabricators), Nick Barone, Ralph Barone and Alex Vergara.

2.       Defendants own, operate, or control a structural steel fabricator, located at 128 44th Street, Brooklyn, NY 11232 under the name "Barone Steel Fabricators".

3.      Upon information and belief, individual Defendants Nick Barone, Ralph Barone, and Alex Vergara serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the structural steel fabricator as a joint or unified enterprise.

4.      Plaintiffs were employed as iron and steel workers at the structural steel fabricator and were assigned to projects all around the city but mostly in Manhattan and the Bronx.

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate overtime compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, over 40 in a week.

7.      Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

8.      At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the overtime compensation required by federal and state law and regulations.

9.      Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

10.    Plaintiffs now bring this action as a class action under Rule 23 and seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

12.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, and Defendants operate a structural steel fabricator that performed most of its jobs in this district. Further, Plaintiffs were employed by Defendants to perform most of their work in this district.

## PARTIES

### *Plaintiffs*

13.    Plaintiff Brayan Bravo ("Plaintiff Bravo" or "Mr. Bravo") is an adult individual residing in Kings County, New York. Plaintiff Bravo was employed by Defendants at Barone Steel Fabricators from approximately June 2017 until on or about October 2019.

14.    Plaintiff Jose Luis Roldan Romero ("Plaintiff Roldan" or "Mr. Roldan") is an adult individual residing in Kings County, New York. Plaintiff Roldan was employed by Defendants at Barone Steel Fabricators from approximately April 2015 until on or about February 2019.

15.    Plaintiff Dumas Armando Alfaro Godinez ("Plaintiff Alfaro" or "Mr. Alfaro") is an adult individual residing in Kings County, New York. Plaintiff Alfaro was employed by Defendants at Barone Steel Fabricators from approximately February 2017 until on or about March 2019.

16.    Plaintiff Jefferson Oswaldo Bravo Hidalgo ("Plaintiff Jefferson" or "Mr. Jefferson") is an adult individual residing in Kings County, New York. Plaintiff Jefferson was employed by

Defendants at Barone Steel Fabricators from approximately June 2015 until on or about December 2015 and from approximately March 2018 until on or about August 2019.

17.   Plaintiff Julio Tigre ("Plaintiff Tigre" or "Mr. Tigre") is an adult individual residing in Kings County, New York. Plaintiff Tigre was employed by Defendants at Barone Steel Fabricators from approximately 2005 until on or about December 2015.

18.   Plaintiff Anderson Antonio Cedeno ("Plaintiff Cedeno" or "Mr. Cedeno") is an adult individual residing in Kings County, New York. Plaintiff Cedeno was employed by Defendants at Barone Steel Fabricators from approximately November 2014 until on or about November 2017.

*Defendants*

19.   At all relevant times, Defendants owned, operated, or controlled a structural steel fabricator, located at 128 44th Street, Brooklyn, NY 11232 under the name "Barone Steel Fabricators", which performed jobs all over the city, but mostly in Manhattan and the Bronx.

20.   Upon information and belief, Barone Steel Fabricators Inc. (d/b/a Barone Steel Fabricators) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 128 44th Street, Brooklyn, NY 11232, but performed most of its jobs in Manhattan and the Bronx.

21.   Defendant Nick Barone is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Nick Barone is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Nick Barone possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

- 4 -

22.    Defendant Ralph Barone is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Ralph Barone is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Ralph Barone possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

23.    Defendant Alex Vergara is sued individually in his capacity as a manager of Defendant Corporation. Defendant Alex Vergara possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and had the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

### *Defendants Constitute Joint Employers*

24.    Defendants operate a structural steel fabricator located in the Sunset Park neighborhood of Brooklyn, but performed most of its projects in Manhattan and The Bronx in New York City.

25.    Individual Defendants, Nick Barone, Ralph Barone and Alex Vergara possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, and control significant functions of Defendant Corporation.

26.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

27.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the

employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

28.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

29.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

30.    Upon information and belief, Individual Defendants Nick Barone and Ralph Barone operate Defendant Corporation as either an alter ego of themselves and/or failed to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a)   failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b)   defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)   transferring assets and debts freely as between all Defendants,

d)   operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e)   operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

f)   intermingling assets and debts of their own with Defendant Corporation,

g)   diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h)   Other actions evincing a failure to adhere to the corporate form.

31.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

32.    In each year from 2014 to 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

33.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the structural steel fabricator on a daily basis are goods produced outside of the State of New York.

### Individual Plaintiffs

34.    Plaintiffs are former employees of Defendants who were employed as iron and steel workers.

35.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

### Plaintiff Brayan Bravo

36.    Plaintiff Bravo was employed by Defendants from approximately June 2017 until on or about October 2019.

37.    Defendants employed Plaintiff Bravo as an iron worker in projects all over the city, but mostly in Manhattan and the Bronx.

38.    Plaintiff Bravo regularly handled goods in interstate commerce, such as metals and other supplies produced outside the State of New York.

39.    Plaintiff Bravo's work duties required neither discretion nor independent judgment.

40.    Throughout his employment with Defendants, Plaintiff Bravo regularly worked in excess of 40 hours per week.

41.   From approximately June 2017 until on or about October 2019, Plaintiff Bravo worked from approximately 6:00 a.m. to 7:00 a.m. until on or about 5:30 p.m. Mondays through Fridays and from approximately 7:00 a.m. to 8:00 a.m. until on or about 3:00 p.m. to 4:00 p.m. on Saturdays (typically 59.5 to 66.5 hours per week).

42.   Throughout his employment, Defendants paid Plaintiff Bravo his wages in a combination of check and cash.

43.   From approximately June 2017 until on or about December 2017, Defendants paid Plaintiff Bravo $17.00 per hour (check for the first 40 hours and cash for the hours over 40).

44.   From approximately January 2018 until on or about October 2019, Defendants paid Plaintiff Bravo $19.00 per hour (check for the first 40 hours and cash for the hours over 40).

45.   Plaintiff Bravo's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

46.   For example, Defendants required Plaintiff Bravo to start working one hour prior to his scheduled start time and to work an additional hour past his scheduled departure time every day, and did not pay him the additional overtime rate he was entitled to receive for these hours, just as they did with all other hours he worked over 40 each week; in addition, just as they did with all hours worked over 40 each week, defendants paid these hours in cash and hid them from the records of hours worked.

47.   Defendants refused to pay Plaintiff Bravo one week paid vacation which he had earned under the company's policy.

48.   Plaintiff Bravo was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

49.   Defendants did not provide Plaintiff Bravo an accurate statement of wages, as required by NYLL 195(3).

50.    In fact, Defendants adjusted Plaintiff Bravo's paystubs so that they reflected inaccurate hours worked.

51.    Defendants did not give any notice to Plaintiff Bravo, in English and in Spanish (Plaintiff Bravo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Jose Luis Roldan Romero*

52.    Plaintiff Roldan was employed by Defendants from approximately April 2015 until on or about February 2019.

53.    Defendants employed Plaintiff Roldan as an iron worker in projects all over the city but mostly in Manhattan and the Bronx.

54.    Plaintiff Roldan regularly handled goods in interstate commerce, such as metals and other supplies produced outside the State of New York.

55.    Plaintiff Roldan's work duties required neither discretion nor independent judgment.

56.    Throughout his employment with Defendants, Plaintiff Roldan regularly worked in excess of 40 hours per week.

57.    From approximately April 2015 until on or about December 2016, Plaintiff Roldan worked from approximately 7:00 a.m. until on or about 5:30 p.m. 4 days a week, from approximately 7:00 a.m. until on or about 7:30 p.m. one day a week Mondays through Fridays and from approximately 7:00 a.m. until on or about 3:30 p.m. or 8:00 a.m. until on or about 4:30 p.m. on Saturdays (typically 61 to 63 hours per week).

58.    From approximately January 2017 until on or about February 2019, Plaintiff Roldan worked from approximately 6:00 a.m. until on or about 5:30 p.m. Mondays through Fridays and from approximately 6:00 a.m. until on or about 4:30 p.m. on Saturdays (typically 68 hours per week).

59.    Throughout his employment, Defendants paid Plaintiff Roldan his wages in a combination of check and cash.

60.    From approximately April 2015 until on or about December 2015, Defendants paid Plaintiff Roldan $13.00 per hour (check for the first 40 hours and cash for the hours over 40).

61.    From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff Roldan $15.00 per hour (check for the first 40 hours and cash for the hours over 40).

62.    From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Roldan $17.00 per hour (check for the first 40 hours and cash for the hours over 40).

63.    From approximately January 2018 until on or about February 2019, Defendants paid Plaintiff Roldan $19.00 per hour (check for the first 40 hours and cash for the hours over 40).

64.    Plaintiff Roldan's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

65.    For example, from approximately June 2015 until on or about December 2016, Defendants required Plaintiff Roldan to work an additional two hours past his scheduled departure time once a week, and did not pay him the additional overtime rate he was entitled to receive for these hours, just as they did with all other hours he worked over 40 each week; in addition, just as they did with all hours worked over 40 each week, defendants paid these hours in cash and hid them from the records of hours worked.

66.    Plaintiff Roldan was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

67.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Roldan regarding overtime and wages under the FLSA and NYLL.

68.    Defendants did not provide Plaintiff Roldan an accurate statement of wages, as required by NYLL 195(3).

69.     In fact, Defendants adjusted Plaintiff Roldan's paystubs so that they reflected inaccurate hours worked.

70.     Defendants did not give any notice to Plaintiff Roldan, in English and in Spanish (Plaintiff Roldan's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Dumas Armando Alfaro Godinez*

71.     Plaintiff Alfaro was employed by Defendants from approximately February 2017 until on or about March 2019.

72.     Defendants employed Plaintiff Alfaro as an iron worker in projects all over the city but mostly in Manhattan and the Bronx.

73.     Plaintiff Alfaro regularly handled goods in interstate commerce, such as metals and other supplies produced outside the State of New York.

74.     Plaintiff Alfaro's work duties required neither discretion nor independent judgment.

75.     Throughout his employment with Defendants, Plaintiff Alfaro regularly worked in excess of 40 hours per week.

76.     From approximately February 2017 until on or about March 2019, Plaintiff Alfaro worked mostly in projects in Manhattan and the Bronx from approximately 6:00 a.m. until on or about 5:30 p.m. Mondays through Fridays and from approximately 6:00 a.m. until on or about 4:30 p.m. on Saturdays (typically 68 hours per week).

77.     Throughout his employment, Defendants paid Plaintiff Alfaro his wages in a combination of check and cash.

78.     From approximately February 2017 until on or about December 2017, Defendants paid Plaintiff Alfaro $14.00 per hour (check for the first 40 hours and cash for the hours over 40).

79.     From approximately January 2018 until on or about March 2019, Defendants paid Plaintiff Alfaro $16.00 per hour (check for the first 40 hours and cash for the hours over 40).

80.   Plaintiff Alfaro was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

81.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Alfaro regarding overtime and wages under the FLSA and NYLL.

82.   Defendants did not provide Plaintiff Alfaro an accurate statement of wages, as required by NYLL 195(3).

83.   In fact, Defendants adjusted Plaintiff Alfaro's paystubs so that they reflected inaccurate hours worked.

84.   Defendants did not give any notice to Plaintiff Alfaro, in English and in Spanish (Plaintiff Alfaro's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Jefferson Oswaldo Bravo Hidalgo*

85.   Plaintiff Jefferson was employed by Defendants from approximately June 2016 until on or about December 2016 and from approximately March 2018 until on or about August 2019.

86.   Defendants employed Plaintiff Jefferson as an iron worker in projects all over the city but mostly in Manhattan and the Bronx.

87.   Plaintiff Jefferson regularly handled goods in interstate commerce, such as metals and other supplies produced outside the State of New York.

88.   Plaintiff Jefferson's work duties required neither discretion nor independent judgment.

89.   Throughout his employment with Defendants, Plaintiff Jefferson regularly worked in excess of 40 hours per week.

90.   From approximately June 2016 until on or about December 2016, Plaintiff Jefferson worked from approximately 7:00 a.m. until on or about 5:30 p.m. 4 days a week, from

approximately 7:00 a.m. until on or about 7:30 p.m. one day a week Mondays through Fridays and from approximately 7:00 a.m. until on or about 3:30 p.m. or 8:00 a.m. until on or about 4:30 p.m. on Saturdays (typically 61 to 63 hours per week).

91.    From approximately March 2018 until on or about August 2019, Plaintiff Jefferson worked from approximately 6:00 a.m. until on or about 5:30 p.m. Mondays through Fridays and from approximately 6:00 a.m. until on or about 4:30 p.m. on Saturdays (typically 68 hours per week).

92.    Throughout his employment, Defendants paid Plaintiff Jefferson his wages in a combination of check and cash.

93.    From approximately June 2016 until on or about December 2016, Defendants paid Plaintiff Jefferson $13.00 per hour (check for the first 40 hours and cash for the hours over 40).

94.    From approximately March 2018 until on or about August 2019, Defendants paid Plaintiff Jefferson $19.00 per hour (check for the first 40 hours and cash for the hours over 40).

95.    Plaintiff Jefferson was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

96.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Jefferson regarding overtime and wages under the FLSA and NYLL.

97.    Defendants did not provide Plaintiff Jefferson an accurate statement of wages, as required by NYLL 195(3).

98.    In fact, Defendants adjusted Plaintiff Jefferson's paystubs so that they reflected inaccurate hours worked.

99.    Defendants did not give any notice to Plaintiff Jefferson, in English and in Spanish (Plaintiff Jefferson's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Julio Tigre*

100.  Plaintiff Tigre was employed by Defendants from approximately 2005 until on or about December 2015.

101.  Defendants employed Plaintiff Tigre as an iron worker and as a ladder installer projects all over the city but mostly in Manhattan and the Bronx.

102.  Plaintiff Tigre regularly handled goods in interstate commerce, such as metals and other supplies produced outside the State of New York.

103.  Plaintiff Tigre's work duties required neither discretion nor independent judgment.

104.  Throughout his employment with Defendants, Plaintiff Tigre regularly worked in excess of 40 hours per week.

105.  From approximately December 2014 until on or about December 2015, Plaintiff Tigre worked from approximately 6:00 a.m. until on or about 4:30 p.m. to 5:30 p.m. six days a week Mondays through Saturdays (typically 63 to 66 hours per week).

106.  Throughout his employment, Defendants paid Plaintiff Tigre his wages in a combination of check and cash.

107.  From approximately December 2014 until on or about December 2015, Defendants paid Plaintiff Tigre $19.00 per hour (check for the first 40 hours and cash for the hours over 40).

108.  Plaintiff Tigre's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

109.  For example, Defendants required Plaintiff Tigre to work an additional hour past his scheduled departure time every day, and did not pay him the additional overtime rate he was entitled to receive for these hours, just as they did with all other hours he worked over 40 each week; in addition, just as they did with all hours worked over 40 each week, defendants paid these hours in cash and hid them from the records of hours worked.

110.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Tigre regarding overtime and wages under the FLSA and NYLL.

111.  Defendants did not provide Plaintiff Tigre an accurate statement of wages, as required by NYLL 195(3).

112.  In fact, Defendants adjusted Plaintiff Tigre's paystubs so that they reflected inaccurate hours worked.

113.  Defendants did not give any notice to Plaintiff Tigre, in English and in Spanish (Plaintiff Tigre's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Anderson Antonio Cedeno*

114.  Plaintiff Cedeno was employed by Defendants from approximately November 2014 until on or about November 2017.

115.  Defendants employed Plaintiff Cedeno as a steel and iron worker projects all over the city but mostly in Manhattan and the Bronx.

116.  Plaintiff Cedeno regularly handled goods in interstate commerce, such as metals and other supplies produced outside the State of New York.

117.  Plaintiff Cedeno's work duties required neither discretion nor independent judgment.

118.  Throughout his employment with Defendants, Plaintiff Cedeno regularly worked in excess of 40 hours per week.

119.  From approximately December 2014 until on or about November 2017, Plaintiff Cedeno worked from approximately 7:00 a.m. until on or about 4:30 p.m., to 5:30 p.m. Mondays through Saturdays (typically 57 to 63 hours per week).

120.  Throughout his employment, Defendants paid Plaintiff Cedeno his wages in a combination of check and cash.

121.  From approximately December 2014 until on or about November 2015, Defendants paid Plaintiff Cedeno $13.00 per hour (check for the first 40 hours and cash for the hours over 40).

122.  From approximately December 2015 until on or about November 2016, Defendants paid Plaintiff Cedeno $14.00 per hour (check for the first 40 hours and cash for the hours over 40).

123.  From approximately December 2016 until on or about November 2017, Defendants paid Plaintiff Cedeno $16.00 per hour (check for the first 40 hours and cash for the hours over 40).

124.  Plaintiff Cedeno's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

125.  For example, Defendants required Plaintiff Cedeno to work an additional 1 hour past his scheduled departure time several days a week, and did not pay him the additional overtime rate he was entitled to receive for these hours, just as they did with all other hours he worked over 40 each week; in addition, just as they did with all hours worked over 40 each week, defendants paid these hours in cash and hid them from the records of hours worked.

126.  Plaintiff Cedeno was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

127.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cedeno regarding overtime and wages under the FLSA and NYLL.

128.  Defendants did not provide Plaintiff Cedeno an accurate statement of wages, as required by NYLL 195(3).

129.   Defendants did not give any notice to Plaintiff Cedeno, in English and in Spanish (Plaintiff Cedeno's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

130.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate overtime compensation as required by federal and state laws.

131.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

132.    Defendants' time keeping system did not reflect the actual hours that Plaintiffs worked. Thus, the paychecks Defendants gave Plaintiffs were inaccurate.

133.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

134.    Defendants paid Plaintiffs their wages in a combination of check and cash.

135.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

136.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

137.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

138.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

139.    Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that

payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

140. Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

141. Plaintiffs bring their FLSA overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA and Rule 23 Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA and Rule 23 Class Period").

142. At all relevant times, Plaintiffs and other members of the FLSA and Rule 23 Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required overtime pay at a one

and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records as required under the FLSA.

143.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

144.    Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

145.    Plaintiffs bring their New York Labor Law overtime pay and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

146.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

147.    There are questions of law and fact common to the Class including:

a)   What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b)   What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c)   Whether Defendants failed and/or refused to pay Plaintiffs the overtime at the premium rate within the meaning of the New York Labor Law;

d)   At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

e) What are the common conditions of employment and in the workplace, such as recordkeeping, clock-in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

148.    The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

149.    The representative parties will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

150.    The common questions of law and fact predominate over questions affecting only individual members.

151.    A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

152.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

153.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

154.   Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

155.   Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

156.   Plaintiffs (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

157.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

158.   Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

159.   Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

160.   Plaintiffs (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

161.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

162.   Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid

by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

163.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

164.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

165.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

166.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)      Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)      Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class members;

(c)      Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA and Rule 23 Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(d)      Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA and Rule 23 Class members;

(e)      Awarding Plaintiffs and the FLSA and Rule 23 Class members damages for the amount of unpaid overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(f)      Awarding Plaintiffs and the FLSA and Rule 23 Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g)      Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs(and the FLSA and Rule 23 Class members);

(h)      Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' (and the FLSA and Rule 23 Class members') compensation, hours, wages and any deductions or credits taken against wages;

(i)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs(and the FLSA and Rule 23 Class members);

(j)     Awarding Plaintiffs (and the FLSA and Rule 23 Class members) damages for the amount of unpaid overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(k)     Awarding Plaintiffs (and the FLSA and Rule 23 Class members) damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(l)     Awarding Plaintiffs (and the FLSA and Rule 23 Class members) liquidated damages in an amount equal to one hundred percent (100%) of the total amount of overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(m)     Awarding Plaintiffs and the FLSA and Rule 23 Class members pre-judgment and post-judgment interest as applicable;

(n)      Awarding Plaintiffs and the FLSA and Rule 23 Class members the expenses incurred in this action, including costs and attorneys' fees;

(o)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(p)     All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
          December 4, 2020

MICHAEL FAILLACE & ASSOCIATES, P.C.

By: _____/s/ Michael Faillace_____

Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

November 30, 2020

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Brayan Bravo

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                        30 de noviembre de 2020

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

November 4, 2020

BY ELECTRONIC SIGNATURE

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jose Luis Roldan Romero

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     4 de noviembre de 2020

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———————

Faillace@employmentcompliance.com

December 2, 2020

BY ELECTRONIC SIGNATURE

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                         Dumas Armando Alfaro Godinez

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                          2 de Diciembre de 2020

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

December 2, 2020

BY ELECTRONIC SIGNATURE

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                             Jefferson  Oswaldo  Bravo Hidalgo

Legal Representative / Abogado:       Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                             2 de diciembre de 2020

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                          Telephone: (212) 317-1200
New York, New York 10165                                          Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

November 30, 2020

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Julio Tigre

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      30 de noviembre de 2020

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

November 30, 2020

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Anderson Antonio Cedeno Cedeno

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       30 de noviembre de 2020

*Certified as a minority-owned business in the State of New York*